The PEOPLE of the State of
Colorado, Complainant,

v.

Donald R. CARWIN, Respondent.

Nos. 05PDJ084, 06PDJ020.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Aug. 22, 2006.

**REPORT, DECISION, AND ORDER IM-
POSING SANCTIONS PURSUANT
TO C.R.C.P. 251.19(c)**

On July 26, 2006, the Presiding Disciplin-
ary Judge ("the Court") held a Sanctions
Hearing pursuant to C.R.C.P. 251.18(d).
Lisa E. Frankel appeared on behalf of the
Office of Attorney Regulation Counsel ("the
People"). Donald R. Carwin ("Respondent")
did not appear, nor did counsel appear on his
behalf. The Court issues the following Re-
port, Decision, and Order Imposing Sanc-
tions.

## I.  *ISSUE*

Disbarment is generally appropriate,
absent significant evidence of mitigation,
when a lawyer knowingly converts client
funds or knowingly violates the terms of a
prior disciplinary order and causes injury.
Respondent knowingly converted funds in
two client matters and knowingly practiced
law with a suspended license in one client

matter. Respondent did not participate in these proceedings and provided no evidence of mitigation to offset several aggravating factors. Is disbarment the appropriate sanction in this case?

**SANCTION IMPOSED: ATTORNEY DISBARRED**

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

■ The People filed a Complaint in 05PDJ084 on November 29, 2005. On March 17, 2006, the People filed a Complaint in 06PDJ020. Respondent failed to file an answer in either of these cases and the Court granted the People's motions for default on February 17, 2006 (05PDJ084) and June 7, 2006 (06PDJ020). The Court also consolidated these cases on June 7, 2006. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence. *People v. Richards,* 748 P.2d 341, 346 (Colo.1987).

The Court hereby adopts and incorporates by reference the factual background of this case fully detailed in the admitted complaints.[1] Respondent took and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on May 17, 1976, and is registered upon the official records of the Colorado Supreme Court, Attorney Registration No. 7265. The allegations in this case arise from Respondent's representation in two client matters.

### The Truninger Matter

On April 23, 2004, Connie Truninger and her husband Robert Hanley retained Respondent to represent them in the investigation of potential civil claims against the Arapahoe County Department of Human Services and paid him a fee of $3,000.00. Respondent did not enter into a written fee agreement with his clients, nor did he communicate the basis or rate of his fee to them in writing, even though he had not previously represent-

ed them. Respondent, however, orally advised them that he would bill for his time at a rate of $175.00 per hour. Respondent did not place the fees into a trust account.

On June 8, 2004, Ms. Truninger met with Respondent at the Arapahoe County Justice Center to allow him access to certain juvenile records. Ms. Truninger and Mr. Hanley also provided Respondent with all of the records and documents in their possession concerning the potential claim. Thereafter, Respondent failed to communicate with his clients or provide them with any work product, despite their repeated efforts to contact him. When the clients asked for a refund of the fees and return of their file, Respondent did neither though he acknowledged that he owed Ms. Truninger $812.50.

Respondent engaged in serious misconduct and violated several rules of professional conduct in his representation of Ms. Truninger and Mr. Hanley. He failed to communicate with them and neglected their case in violation of Colo. RPC 1.3, 1.4(a) and 1.4(b). Respondent also failed to communicate the basis or rate of his fees, failed to return their retainer fees in a timely manner, failed to provide a timely accounting, and failed to return their file in violation of Colo. RPC 1.5(b), 1.15(b), 1.15(f)(1), and 1.16(d). However, Respondent's most serious conduct was his knowing conversion or misappropriation of funds belonging to his clients. He exercised unauthorized dominion and control over all or a portion of their advanced retainer for over one year without their permission and in the process violated Colo. RPC 8.4(c).

### The Prott Matter

In February 2005, Respondent agreed to represent Travis Prott in a court case. Respondent advised Mr. Prott that he would charge $2,500.00 for his services. Respondent agreed Mr. Prott could pay the fee in installments as long as he received the entire retainer before the court hearing.[2]

Mr. Prott made regular payments and Respondent accepted the final $500.00 install-

---

1. *See* the People's complaints in 05PDJ084 and 06PDJ020.

2. Travis Prott stated at the Sanctions Hearing that at the time he hired Respondent, he was 21 years old and worked as a server in a restaurant.

ment payment on May 30, 2005, nearly two weeks after Respondent had been immediately suspended from the practice of law in State of Colorado. Respondent never notified Mr. Prott of his suspension as required by C.R.C.P. 251.28. In the meantime, Respondent represented Mr. Prott in a matter before the Department of Motor Vehicles on June 22, 2005.

On August 11, 2005, the date of the court hearing, Respondent advised Mr. Prott for the first time that he could no longer represent him. The same day, Respondent deposited the final $500.00 installment payment made by Mr. Prott on May 30, 2006. Respondent never returned this final payment or any other payment despite knowing he could no longer represent Mr. Prott.

On September 20, 2005, Mr. Prott wrote a letter to Respondent and requested an accounting, a refund of his retainer and the return of his file. Respondent failed to respond to this letter. Mr. Prott never received an accounting, a refund of his retainer, or the return of his file as of the date of the filing of the Complaint.

Respondent engaged in serious misconduct and violated several rules of professional conduct in the Prott matter. He failed to communicate with Mr. Prott and caused delay in the resolution of his case in violation of Colo. RPC 1.4(a) and 1.4(b). Respondent again engaged in knowing conversion or misappropriation of funds belonging to his client and in the process violated Colo. RPC 8.4(c). Finally, Respondent practiced law with a suspended license and engaged in deceit in violation of Colo. RPC 5.5(a) and Colo. RPC 8.4(c).

### III. *SANCTIONS*

The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer

misconduct. *In re Roose*, 69 P.3d 43, 46–47 (Colo.2003). In imposing a sanction after a finding of lawyer misconduct, the Court must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

Respondent's failure to participate in these proceedings leaves the Court with no alternative but to consider only the established facts and rule violations set forth in the complaints in the consolidated cases in evaluating the first three factors listed above. Respondent violated duties owed to his clients and the legal system. Respondent violated his duty to preserve the property of his clients and his duty to obey professional rules and obligations as an officer of the court. The entries of default established that Respondent *knowingly* converted funds entrusted to him by his clients and *knowingly* practiced law with a suspended license. The facts established by the entries of default also support a finding of actual harm to Respondent's clients in their loss of funds and to the legal profession in the delay of court proceedings.[3]

The People alleged that several aggravating factors exist including prior disciplinary offenses,[4] a dishonest or selfish motive, a pattern of misconduct, bad faith obstruction of the disciplinary proceedings, substantial experience with the law, and indifference to making restitution. *See* ABA *Standards* 9.22(a), (b), (c), (e), (i) and (j). Due in part to the absence of any contradictory evidence, the Court finds clear and convincing evidence to support each aggravating factor alleged by the People.

Respondent presented no evidence in mitigation, but the People conceded the following: Respondent was separated from his wife of thirty years at or about the time of these events; she died on January 29, 2005; two of Respondent's children suffer from cystic fibrosis; and one child has been hospitalized for the same in 2003, 2004, and 2005 for this

3. The Court considered a written statement from Connie Truninger and Robert Hanley, and an oral statement from Travis Prott in its consideration of the appropriate sanction in this matter pursuant to C.R.C.P. 251.18(a).

4. Respondent received a private admonition on December 12, 1995, and was suspended for six months on August 2, 2000, effective September 2, 2005.

cystic fibrosis and diabetes. Furthermore, in 2004 Respondent was diagnosed with high cholesterol and diabetes.

The ABA *Standards* suggest that the presumptive sanction for the misconduct evidenced by the admitted facts and rule violations in this case is disbarment. Respondent knowingly converted at least a portion of the advanced fees paid to him by his clients. Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client and suspension is generally appropriate when a lawyer knowingly fails to perform services for a client or engages in a pattern of neglect and causes injury or potential injury to a client. ABA *Standards* 4.11 and 4.42(b).

Respondent also knowingly practiced law with a suspended license. Disbarment is generally appropriate when a lawyer intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession. ABA *Standard* 8.1.

In the absence of significant mitigating factors, Colorado Supreme Court case law applying the ABA *Standards* holds disbarment is the presumptive sanction for conversion of client funds alone. Knowing conversion or misappropriation of client money "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." *People v. Varallo*, 913 P.2d 1, 11 (Colo.1996). Neither the lawyer's motive in taking the money, nor the lawyer's intent regarding whether the deprivation is temporary or permanent, are relevant for disciplinary purposes. *Id.* at 10–11. Significant mitigating factors may overcome the presumption of disbarment, however, however, the People's representation of Respondent's emotional difficulties alone are not sufficient mitigation to warrant a sanction less than disbarment in this case. *See In re Fischer*, 89 P.3d 817 (Colo.2004) (finding significant facts in mitigation).

Additional Colorado Supreme Court case law applying the ABA *Standards* holds disbarment is the presumptive sanction for Re-

spondent's misconduct. *See In re Hugen*, 973 P.2d 1267 (Colo.1999) (attorney disbarred for knowingly misappropriating client funds and continuing to practice law while under suspension); *People v. Redman*, 902 P.2d 839 (Colo.1995) (unauthorized practice of law during administrative suspension and after discipline for continuing to practice after suspension warrants disbarment); and *People v. Ebbert*, 925 P.2d 274 (Colo.1996) (disbarment warranted for misconduct which included practicing law during suspension period).

Respondent's failure to refund the advanced fees alone likely warrants disbarment. His additional misconduct in practicing law with a suspended license reinforces the conclusion that disbarment is the appropriate sanction in this case. Finally, Respondent's complete failure to participate in these proceedings further precludes any deviation from the presumptive sanction.

## IV. CONCLUSION

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The facts established in the complaint, without explanation or mitigation, reveal the serious danger Respondent poses to the public. Respondent failed to deal diligently or honestly with two separate clients and this misconduct seriously adversely reflects on his fitness to practice law. Absent extraordinary factors in mitigation not presented here, the ABA *Standards* and Colorado Supreme Court case law applying the ABA *Standards* both support disbarment. Upon consideration of the nature of Respondent's misconduct, his mental state, the significant harm and potential harm caused, and the absence of substantial mitigating factors, the Court concludes there is no justification for a sanction short of disbarment.

## V. ORDER

The Court therefore **ORDERS:**

1. DONALD R. CARWIN, Attorney Registration No. 7265, is **DISBARRED** from the practice of law, effective thirty-one (31) days from the

date of this Order, and his name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado.

2. DONALD R. CARWIN **SHALL** pay restitution to the Attorney's Fund for Client Protection in the amount of $5,500.00.

3. DONALD R. CARWIN **SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days within which to respond.